**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DIESEL USA, Inc.,[1] | Case No. 19-10432 (   ) |
| Debtor. | |

**DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 345(b), 363(c) AND 364(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO (I) CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEM, (II) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS, AND (III) WAIVE REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE**

Diesel USA, Inc., as debtor and debtor-in-possession (the "Debtor"), files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** ("the Proposed Order"), authorizing the Debtor to: (i) continue to use its existing cash management system (the "Cash Management System"), (ii) maintain its existing bank accounts (the "Bank Accounts") and Business Forms (defined below), and (iii) waive the requirements of section 345(b) of the Bankruptcy Code to the extent its Bank Accounts contain funds in excess of the amounts insured by the Federal Deposit Insurance Corporation (the "FDIC"). The Debtor respectfully states as follows in support of the Motion:

**BACKGROUND**

1.     On the date hereof (the "Petition Date"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

---

[1]  The last four digits of the Debtor's federal tax identification number are 4308. The Debtor's principal offices are located at 220 West 19th Street, New York, New York 10011.

2.      The factual background regarding the Debtor, including its business operations, capital and debt structure, and the events leading to the filing of this chapter 11 case, is set forth in more detail in the *Declaration of Mark G. Samson in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "<u>First Day Declaration</u>") filed contemporaneously herewith.

3.      On the Petition Date, the Debtor filed the Disclosure Statement in Connection with Chapter 11 Plan of Reorganization of Diesel USA, Inc. and the Chapter 11 Plan of Reorganization of Diesel USA, Inc. (the "<u>Plan</u>").[2]

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are sections 105(a), 345, and 363 of the Bankruptcy Code, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## RELIEF REQUESTED

5.      Pursuant to sections 105(a), 345(b), 363(c), and 364(a) of the Bankruptcy Code, the Debtor requests entry of the Proposed Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, authorizing the Debtor to: (i) continue to use its existing Cash Management System, (ii) maintain its existing Business Forms (defined below), and (iii) waive the requirements of section 345(b) of the Bankruptcy Code to the extent its Bank Accounts contain funds in excess of the amounts insured by the FDIC.

---

[2] Capitalized terms not otherwise defined shall have the meaning ascribed in the Plan or the First Day Declaration, as the case may be.

6.      To efficiently and seamlessly manage its business, the Debtor uses the Cash Management System to collect and transfer the funds generated by its collective operations and to disburse funds needed to satisfy its financial obligations. The Cash Management System facilitates cash monitoring, forecasting and reporting, and enables the Debtor to maintain control over the administration of its Bank Accounts located at various banks (the "Banks"), including those listed on **Exhibit B** annexed hereto.

7.      By preserving business continuity, and avoiding the disruption and delay to the Debtor's payroll, disbursement, and collection activities that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest, including employees, vendors, clients, and creditors, will be best served.  The benefit to the Debtor, its business operations, and all parties in interest will be considerable.  Moreover, the confusion that would otherwise result, absent the relief requested herein, would ill-serve the Debtor's rehabilitative efforts.

8.      In addition, to minimize expenses, the Debtor further requests that it be authorized to continue to use its correspondence and business forms, including, but not limited to, purchase orders, invoices, multi-copy checks, letterhead, envelopes, promotional materials, and other business forms (collectively, the "Business Forms"), substantially in the forms existing immediately before the Petition Date, without reference to its status as debtor-in-possession.

### The Debtor's Cash Management System

9.      The Debtor's Cash Management System, as illustrated in **Exhibit C** annexed hereto, consists of nine (9) Bank Accounts[3] at four (4) different banks (the "Banks"), all of which pool into an account maintained by Bank of America, N.A. ("BOA").  With this system in place,

---

[3] Additionally, the Debtor has two inactive Bank Accounts with Deutsche Bank A.G. which were used historically, but are no longer part of the Debtor's Cash Management System and carry a zero balance.

the Debtor is able to accurately record collections, transfers, and disbursements as they are made through the various Bank Accounts. The Cash Management System has six (6) main components: (i) cash collection at the store level, whereby the cash and checks from sales at the Debtor's retail stores are deposited into one of three (3) store accounts (Account Nos. 5332, 1422, 7490) (the "Store Accounts")[4]; (ii) the sweeping of deposits from the Store Accounts, on a daily basis, into a consolidated store account (Account No. 9166) (the "Master Store Account"); (iii) electronic collections from online sales and merchant accounts at retail locations into a concentration account (the "Electronic Deposit Account") (Account No. 2540); (iv) collections from wholesale vendors into a lockbox account (the "Lockbox Account") (Account No. 2553); (v) the sweeping of all funds, on a daily basis, from the Master Store Account, the Electronic Deposit Account, and the Lockbox Account into a concentration account (Account No. 2524) (the "Concentration Account"); and (vi) a disbursement account (Account No. 0721) (the "Disbursement Account") and payroll account (Account No. 2537) (the "Payroll Account") from which funds are drawn from the Concentration Account for check disbursements, wires, or other methods to satisfy payments in the ordinary course of business to third parties and payroll obligations.

10. Two (2) of the four (4) Banks are on the Office of the United States Trustee's list of authorized depositories while the other two (2) Banks are not. However, the accounts at the two (2) Banks which are not authorized depositories carry a daily zero balance, as funds in such accounts are swept daily into accounts at United States Trustee approved Banks.

---

[4] The Store Accounts consist of two (2) accounts maintained at the Bank of Hawaii Corporation, one for each of the Debtor's store locations in Hawaii, and one (1) account maintained at HSBC Bank USA, N.A. for all of the Debtor's other store locations.

**BASIS FOR RELIEF**

**I.    Continuing the Cash Management System is in the Best
Interests of the Debtor, its Creditors, and all Parties in Interest**

11.    The Debtor seeks authorization to continue to operate its Cash Management System consistent with its prepetition practices and operations. The Cash Management System constitutes an ordinary course and essential business practice providing significant benefits to the Debtor, including, among other things, the ability to (i) control corporate funds; (ii) ensure the maximum availability of funds when and where necessary; and (iii) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate account-balance information.[5]

12.    As a practical matter, because the Debtor conducts business in numerous locations that collect funds from customers, and as such it would be extremely difficult and expensive to establish and maintain a different cash management system. Moreover, the Debtor is concurrently requesting a Plan Confirmation Hearing in approximately thirty-seven (37) days from the Petition Date. Requiring the Debtor's strict compliance with the U.S. Trustee Guidelines (as defined herein) under these circumstances, including the requirement to close the Bank Accounts and reopen new bank accounts, would be unnecessarily burdensome and divert the attention of key individuals whose efforts are needed for the Debtor to successfully reorganize. The Debtor therefore requests that the Court approve the continuation of its existing Cash Management System after the Petition Date. The existing Cash Management System is the most effective mechanism for managing receipts and disbursements between the Debtor and third parties.

---

[5] The Cash Management System does not contain "cash collateral" and, accordingly, the Debtors are not seeking consent from any third parties or relief from the Court to use "cash collateral."

01:24231328.1

5

13.     *The Operating Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtors in Possession and Chapter 11 Trustees*, dated February 5, 2015 (the "U.S. Trustee Guidelines"), require debtors in possession to, among other things:

> a.     establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes;
>
> b.     close all existing bank accounts and open new debtor-in-possession accounts;
>
> c.     maintain a separate debtor-in-possession account for cash collateral; and
>
> d.     obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

14.     These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Considering, however, that the Debtor's business and financial affairs are complex and require the collection, disbursement, and movement of funds through its Bank Accounts, enforcement of the provisions of the U.S. Trustee Guidelines during this Chapter 11 Case would severely disrupt the Debtor's operations.  Accordingly, the Debtor respectfully requests that the Court allow it to operate each of its Bank Accounts listed on **Exhibit B** attached hereto as they were maintained in the ordinary course of business before the Petition Date.

15.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(l) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  Additionally,

courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc*., 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp*., 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

16.    Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and 43 of its subsidiaries "to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id*. at 620.  The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id*. at 621.

17.    Here, the Debtor utilizes the Cash Management System in its current form as part of its ordinary and usual business practices, and as such, the Debtor believes the continued use

of the Cash Management System falls within the purview of ordinary course transactions permitted under section 363(c)(1) of the Bankruptcy Code. Moreover, appropriate circumstances exist for the Court to authorize the Debtor's continued use of the Cash Management System under sections 363(b)(1) and 105(a) of the Bankruptcy Code.

18.     The relief requested in this Motion will help minimize any disruption in the Debtor's business operations during its restructuring, and preserve the value of the Debtor's Estate.   Indeed, any disruptions in the Cash Management System could lead to delays in satisfying the Debtor's obligations.  In order to avoid the potential erosion of value that could ensue from any such interruptions in the Debtor's ordinary course business operations, the Debtor believes it is imperative that it be authorized to continue the Cash Management System consistent with its historical practice.

19.     Moreover, requiring strict adherence to the U.S. Trustee Guidelines would prove to be exceedingly burdensome to the Debtor and its management, reduce efficiencies, and cause unnecessary expense.   The delays that would result from opening the new accounts and revising cash management procedures would disrupt the Debtor's business operations at this critical time, have little or no benefit to the Debtor's Estate, and erode the value of the Debtor's enterprise to the detriment of all stakeholders.   Accordingly, the Debtor should be allowed to continue using the Cash Management System consistent with its historical practice.

## II.     Authorizing the Debtor to Continue Using
        Debit, Wire and ACH Payments is Warranted

20.     The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check. In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of Estate

funds must be made by check with a notation representing the reason for the disbursement. In the ordinary course of business, the Debtor conducts transactions through ACH transfers and other similar methods. If the Debtor's ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the Debtor may be unable to perform under certain contracts, its business operations may be unnecessarily disrupted, and the Estate will incur additional costs.

**III.    Authorizing the Banks to Continue to Maintain, Service, and
Administer the Bank Accounts in the Ordinary Course of Business is Warranted**

21.    The Debtor respectfully requests that the Court authorize the Banks to continue to maintain, service, and administer its Bank Accounts as accounts of the Debtor as debtor-in-possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided, however,* any check, draft, or other notification that the Debtor advises the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

22.    The Debtor further requests that the Court authorize the Banks to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.  The Debtor also requests that, to the extent a Bank honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtor; or (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtor or to its Estate on account of such prepetition

check or other item honored postpetition. The Debtor respectfully submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise. Moreover, the Debtor requests that the Court authorize the Banks to (a) continue to charge the Debtor regular and ordinary course Bank Fees, as applicable, and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business.

## IV.    Cause Exists for Waiving the Deposit and Investment Guidelines of Section 345 of the Bankruptcy Code

23.    The Debtor requests that the Court waive the requirements of section 345(b) of the Bankruptcy Code and permit the Debtor to maintain its deposits in the accounts in accordance with its existing deposit practices.

24.    Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) requires the estate to obtain from the entity with which the money is deposited or invested a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court for cause orders otherwise.  11 U.S.C. § 345(a).  In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.  Section 9303 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation.  31 U.S.C. § 9303.

25.     Strict compliance with the requirements of section 345(b) of the Bankruptcy Code would, in a case such as this, be inconsistent with section 345(a), which permits a debtor-in-possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." 11 U.S.C. § 345(a).  Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) of the Bankruptcy Code to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause."  140 Cong. Rec. 10,767 (Oct. 4, 1994), 1994 WL 545773.

26.     Section 345(b) also expressly provides that a court may modify these requirements for cause. The Debtor submits that, under the existing circumstances, cause exists to authorize the Debtor to continue to deposit in substantially the same manner as the Debtor has invested such funds prior to the Petition Date.

27.     It is within the Court's discretion to extend or waive the investment guidelines requirement under section 345(b) of the Bankruptcy Code "for cause." 11 U.S.C. § 345(b); *see also* 140 Cong. Rec. H10752-01 (October 4, 1995) (section 345(b) investment guidelines may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, [but] can work to needlessly handcuff larger, more sophisticated debtor"). In determining whether "cause" is present, courts consider a "totality of the circumstances" test utilizing the following factors:

(a)     The sophistication of the debtor's business;

(b)     The size of the debtor's business operations;

(c)     The amount of investments involved;

(d)     The bank ratings (Moody's and Standard and Poor's) of the financial institutions where debtor-in-possession funds are held;

(e)     The complexity of the case;

(f)   The safeguards in place within the debtor's own business of insuring the safety of the funds;

(g)   The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(h)   The benefit to the debtor;

(i)   The harm, if any, to the estate; and

(j)   The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (citations omitted).

28.   Cause exists to grant a waiver of the requirements of section 345 of the Bankruptcy Code.  The Debtor believes that it is in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code because substantially all of the Bank Accounts are maintained at a U.S. Trustee-approved depository institution, and those which are not are swept daily into Bank Accounts which are.  Nevertheless, out of an abundance of caution, the Debtor requests a waiver of the requirements of section 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with the Debtor's current practices as causes exists to waive any such noncompliance as set forth herein given the anticipated short duration of this chapter 11 case and that all funds are deposited safely and prudently at a financially-stable banking institution.

V.   **Maintenance of the Debtor's Existing
Bank Accounts and Business Forms Is Warranted**

29.   To avoid disruption of the Cash Management System and unnecessary expense, pursuant to Local Rule 2015-2(a), the Debtor requests that it be authorized to continue to use its Business Forms substantially in the form existing immediately before the Petition Date, without reference to its status as debtor-in-possession. The Debtor submits that parties in interest will not

be prejudiced if the Debtor is authorized to continue to use its Business Forms substantially in the forms existing immediately before the Petition Date.

30.     If the Debtor is not permitted to maintain and utilize its Bank Accounts and continue to use its existing Business Forms, the resulting prejudice will include, among other things, (i) disruption of the ordinary financial affairs and business operations of the Debtor, (ii) delay in the administration of the Debtor's Estate, and (iii) cost to the Estate to set up new systems, open new accounts, and print new Business Forms.

31.     Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, is in the best interests of its Estate and creditors, and should be granted in all respects.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

32.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtor believes an immediate and orderly transition into chapter 11 is critical to the viability of its operations and that any delay in granting the relief requested could hinder the Debtor's operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of this chapter 11 case could severely disrupt the Debtor's operations at this critical juncture and imperil the Debtor's restructuring.  Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

33.     To implement the foregoing successfully, the Debtor requests that the Court enter the Proposed Order providing that notice of the relief requested herein satisfies Bankruptcy Rule

6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

34.     The Debtor will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's 20 largest unsecured creditors; (iii) the Internal Revenue Service; (iv) the Office of the United States Attorney for the District of Delaware; (v) the Banks; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.   Notice of this Motion and any order entered on this Motion will be served as required by Local Rule 9013-1(m).   In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

35.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein, substantially in the form of **Exhibit A**, and such other and further relief as is just and appropriate.

Dated:  March 5, 2019
            Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

By:   */s/ Kenneth J. Enos*
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Travis G. Buchanan (No. 5595)
1000 North King Street
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253
Email: pmorgan@ycst.com
Email: kenos@ycst.com
Email: tbuchanan@ycst.com

-and-

**ARENT FOX LLP**
George P. Angelich (*pro hac vice pending*)
David J. Mayo (*pro hac vice pending*)
Phillip Khezri (*pro hac vice pending*)
1301 Avenue of the Americas
Floor 42
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990
Email: george.angelich@arentfox.com
Email: david.mayo@arentfox.com
Email: phillip.khezri@arentfox.com

Proposed Co-Counsel for Diesel USA, Inc.

## Exhibit A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DIESEL USA, Inc.,[1] | Case No. 19-10432 (   ) |
| Debtor. | **Ref. No. __** |

**ORDER PURSUANT TO SECTIONS 105(a), 363(c), 345(b) AND 364(a)**
**OF THE BANKRUPTCY CODE AUTHORIZING DEBTOR TO (I) CONTINUE**
**TO USE EXISTING CASH MANAGEMENT SYSTEM, (II) TO MAINTAIN**
**EXISTING BANK ACCOUNTS AND BUSINESS FORMS, AND (III) WAIVE**
**REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion")[2] of Diesel USA, Inc. in the above-referenced chapter 11

case, as debtor and debtor-in-possession (the "Debtor"), for an order, pursuant to sections 105(a),

363(c), 345(b) and 364(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code") for: (a) authorization to continue to use its existing cash management system (the "Cash

Management System") and to maintain existing bank accounts (the "Bank Accounts") and

business forms (the "Business Forms"), and (b) a waiver of section 345(b) of the Bankruptcy

Code, all as more fully set forth in the Motion; and this Court having found that venue of this

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the Debtor's notice of the Motion was appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court; and this Court having determined that the legal and factual bases set forth in the Motion

and at the hearing establish just cause for the relief granted herein; and upon all of the

---

[1] The last four digits of the Debtor's federal tax identification number are 4308.  The Debtor's principal offices are located at 220 West 19th Street, New York, New York 10011.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

01:24231328.1

proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT

1.      The Motion is GRANTED as set forth herein.

2.      The Debtor is authorized and empowered, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to continue to manage its cash pursuant to the Cash Management System maintained by the Debtor before the commencement of this chapter 11 case and under the terms of the Service Agreements (as defined below), and to collect, concentrate, and disburse cash in accordance with that Cash Management System.

3.      The Debtor is authorized to: (i) designate, maintain and continue to use any or all of its existing Bank Accounts, including but not limited to the Bank Accounts with those banks (the "Banks") listed on Exhibit B to the Motion and annexed hereto, in the names and with the account numbers existing immediately prior to the commencement of this chapter 11 case, (ii) deposit funds into and withdraw funds from such accounts by all usual means including, without limitation, checks, wire transfers, automated transfers and other debits, and (iii) treat its prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

4.      All Banks with whom the Debtor maintains Bank Accounts are authorized to maintain, service, and administer the Bank Accounts and any other accounts opened postpetition in accordance with applicable non-bankruptcy law and in accordance with the service agreements and related documentation between the Debtor and its respective Banks (the "Service Agreements"), and the same may be amended from time to time, including by lifting any administrative or debit freeze placed on any of the Bank Accounts as a consequence of the filing of the petition commencing this case.

5.      Unless otherwise ordered by this Court, no Bank shall honor or pay any check issued or dated prior to the Petition Date; provided, however, that any such Bank may rely on the representations of the Debtor with respect to whether any check or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to an Order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

6.      The Debtor is directed to maintain records of each and every transfer within the Cash Management System occurring postpetition to the same extent maintained by the Debtor prior to the Petition Date, such that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, the Debtor's books and records.

7.      The Debtor's continued use of its Cash Management System shall be deemed to comply with section 345 of the Bankruptcy Code, and the Debtor is relieved from the obligations pursuant to section 345(b) of the Bankruptcy Code to obtain a bond from any entity for any of the other Bank Accounts.

8.      Nothing contained herein shall prevent the Debtor from opening any additional bank accounts, or closing any existing Bank Account(s), as it may deem necessary and appropriate, and the Banks are authorized to honor the Debtor's requests to open or close, as the case may be, such Bank Accounts or additional bank accounts at an authorized depository (unless otherwise agreed by the Office of the United States Trustee for the District of Delaware).

9.      Pursuant to section 364(a) of the Bankruptcy Code, the Debtor is authorized in connection with the ordinary operation of its Cash Management System to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing.

01:24231328.1

3

10.     The Debtor is authorized to use its existing Business Forms, including, check stock.

11.     The Debtor is authorized and shall (i) pay undisputed prepetition amounts outstanding as of the date hereof, if any, owed to its Banks as service charges for the maintenance of the Cash Management System, and (ii) reimburse the Banks for any claims arising, or chargebacks of deposits made, before or after the Petition Date in connection with customer checks or other deposits into the Bank Accounts that have been dishonored or returned for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor is responsible therefor by operation of non-bankruptcy law or under the terms of the Service Agreements with the Banks.

13.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

16.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

17.     The Bankruptcy Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

18.     For all Banks that are party to a Uniform Depository Agreement with the United States Trustee, within fifteen days of the date of entry of this Order, the Debtor shall (i) contact such Bank, (ii) provide the Bank with the Debtor's tax identification number and (iii) identify

each of their Bank Accounts held at such Banks as being held by a debtor-in-possession in a bankruptcy case and provide the case number.

19.     For any Bank that is not party to a Uniform Depository Agreement with the United States Trustee, if any, the Debtor shall use its good faith efforts to cause the bank to execute a Uniform Depository Agreement in a form prescribed by the United States Trustee within forty five days of the date of entry of this Order.  The United States Trustee's right to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the United States Trustee are fully reserved.

## Exhibit B
### DEBTOR'S BANK ACCOUNTS

| Description of Account | Purpose of Account | Bank Name | Account Number |
|---|---|---|---|
| Master Store Account | • Cash concentration account for all retail locations<br>• Sweeps to Concentration Account | Deutsche Bank | 9166 |
| Historical Account (not in use) | N/A | Deutsche Bank | 9874 |
| Historical Account (not in use) | N/A | Deutsche Bank | 7079 |
| Non-Hawaii Stores Account | • Cash deposit account from non-Hawaii Retail Locations<br>• Sweeps to Master Store Account | HSBC | 7490 |
| Ala Moana Store Account | • Cash deposit account for Ala Moana Retail Store<br>• Sweeps to Master Store Account | Bank of Hawaii | 5332 |
| Kalakaua Store Account | • Cash deposit account for Kalakaua Retail Account<br>• Sweeps to Master Store Account | Bank of Hawaii | 1422 |
| Concentration Account | • Concentration account for funds in Electronic Deposit Account, Master Store Account, and Lockbox Account<br>• Funds are swept to Disbursement Account and Payroll Account to extent necessary to fund such accounts | Bank of America | 2524 |
| Electronic Deposit Account | • Deposit account for non-cash collections at the store level and from online sales, whereby ACH and other electronic transfers, including transfers from credit and debit card processers are deposited | Bank of America | 2540 |
| Lockbox Account | • Deposit account for payments from wholesalers<br>• Sweeps to Concentration Account | Bank of America | 2553 |
| Payroll Account | • Used to fund payroll obligations<br>• Funded by Concentration Account | Bank of America | 2537 |
| Disbursement Account | • Used to pay Debtor's accounts payable<br>• Funded by Concentration Account | Bank of America | 0721 |

## Exhibit C

## DEBTOR'S CASH MANAGEMENT SYSTEM

# Diesel USA, Inc. – Banking Structure

