**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DIESEL USA, Inc.,[1] | Case No. 19-10432 (MFW) |
| Debtor. | |

**FIRST AMENDED CHAPTER 11 PLAN**
**OF REORGANIZATION OF DIESEL USA, INC.**

**ARENT FOX LLP**
George P. Angelich (admitted *pro hac vice*)
David J. Mayo (admitted *pro hac vice*)
Phillip Khezri (admitted *pro hac vice*)
1301 Avenue of the Americas
Floor 42
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990

Dated: April 10, 2019

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**
Pauline K. Morgan (No. 3650)
Kenneth J. Enos (No. 4544)
Travis G. Buchanan (No. 5595)
1000 North King Street
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253

---

[1] The last four digits of the Debtor's federal tax identification number are 4308. The Debtor's principal offices are located at 220 West 19th Street, New York, NY 10011.

**INTRODUCTION**

Diesel USA, Inc. (the "<u>Debtor</u>") proposes the following chapter 11 plan of reorganization (the "<u>Plan</u>") pursuant to chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  Capitalized terms used in the Plan have the meanings ascribed to such terms in Article I.A of the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, as well as a summary and analysis of the Plan and other related matters, including distributions to be made under the Plan.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

**ARTICLE I – DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION**

A. <u>Defined Terms</u>. As used herein, the following terms have the respective meanings specified below, except as expressly provided in other Sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined).  Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

1. "<u>Administrative Claim</u>" means a Claim for any expense Allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

2. "<u>Allowed</u>" means, with respect to any Claim or Interest, such Claim or Interest or any portion thereof that the Debtor has assented to the validity of or that has been (a) expressly allowed under the Plan, (b) that is not Disputed, (c) that is either allowed or determined by a Final Order of a court of competent jurisdiction, or (d) that is agreed to by the Debtor or Reorganized Debtor and the holder of such Claim or Interest; <u>provided, however,</u> that, notwithstanding anything herein to the contrary, by treating a Claim as an "Allowed Claim" or an Interest as an "Allowed Interest," the Debtor does not waive its rights to contest the amount and validity of such Claim or Interest to the extent it is disputed, contingent or unliquidated, in the manner and venue in which such Claim or equity Interest would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced; and <u>provided, further</u> that the amount of any Allowed Claim or Allowed Interest shall be determined in accordance with the Bankruptcy Code, including §§ 502(b), 503(b) and 506 of the Bankruptcy Code.

3. "<u>Avoidance Actions</u>" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor and its recovery, subordination, or other remedies that may be brought by and on behalf of the Debtor and its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under §§ 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code.

4. "<u>Bankruptcy Code</u>" means Title 11 of the United States Code as of the Petition Date.

5. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware, which has jurisdiction over the Chapter 11 Case.

6. "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

7. "<u>Business Day</u>" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

8. "<u>Cash</u>" means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

9. "<u>Causes of Action</u>" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, including any Avoidance Action, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

10. "<u>Chapter 11 Case</u>" means the case under chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case No. 19-10432 (MFW).

11. "<u>Claim</u>" means a claim against the Debtor or its property as defined in Bankruptcy Code § 101(5), including: (a) any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

12. "<u>Class</u>" means a category consisting of holders of Claims or Interests substantially similar in nature to the Claims or Interests of other holders placed in that category, as designated in <u>Article III</u> of the Plan.

13. "<u>Closed</u>" means entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case.

14. "<u>Confirmation Date</u>" means the date the Bankruptcy Court enters the Confirmation Order.

15. "<u>Confirmation Hearing</u>" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan scheduled for April 12, 2019 at 10:30 a.m. (ET), as such hearing may be adjourned or continued from time to time.

16. "<u>Confirmation Order</u>" means the order(s) confirming the Plan in accordance with the provisions of the Bankruptcy Code.

17. "<u>Cure</u>" means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract or Unexpired Lease of the Debtor and to permit the Debtor to assume that contract or lease under § 365(a) of the Bankruptcy Code.

18. "<u>Cure Schedule</u>" means the schedule of proposed Cure amounts for (i) any Executory Contract proposed to be assumed for which the Debtor proposes a Cure amount other than $0.00 and (ii) each Unexpired Lease proposed to be assumed, as the same may be amended, modified, or supplemented from time to time and which will be included in the Plan Supplement.

19. "<u>D&O Liability Insurance Policies</u>" means all insurance policies of the Debtor for its directors', managers' and officers' liability, including runoff policies or tail coverage.

20. "<u>Disallowed</u>" means, in reference to a Claim, a Claim or any portion of a Claim that has been disallowed or withdrawn by Final Order.

21. "<u>Disclosure Statement</u>" means the written disclosure statement and any supplements thereto (including the Plan Supplement and all schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time.

22. "<u>Disputed</u>" means, as to any Claim (or portion thereof) or Interest against the Debtor, a Claim or Interest to the extent the allowance of such Claim or Interest is the subject of (i) a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, and which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by an order of the Bankruptcy Court, or (ii) a dispute that is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law.

23. "<u>Effective Date</u>" means the date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Plan specified in <u>Article VIII</u>, have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Reorganized Debtor with the Bankruptcy Court.

24. "<u>Estate</u>" means the bankruptcy estate of the Debtor created pursuant to § 541 of the Bankruptcy Code.

25. "<u>Exculpated Parties</u>" means each of the following solely in their capacity as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the Debtor's and Reorganized Debtor's directors and officers, (d) the Professionals, and (e) only to the extent found to be fiduciaries of the Estate, the Debtor's and Reorganized Debtor's shareholders, trustees, employees, advisors, professionals, and agents.

26. "<u>Executory </u>Contract" means any contract to which the Debtor is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

27. "<u>Final Order</u>" means an order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired.

28. "<u>General Unsecured Claim</u>" means any Claim against the Debtor existing as of the Petition Date other than a Rejection Damages Claim, Secured Claim, Administrative Claim, Priority Tax Claim, or Other Priority Claim.

29. "<u>Holder</u>" means a Person or entity holding a Claim or Interest.

30. "<u>Impaired</u>" means impaired within the meaning of § 1124 of the Bankruptcy Code.

31. "<u>Insurance Policy</u>" means any issued policy of insurance and any agreements relating thereto covering the Debtor, the Debtor's Estate or its assets, directors, officers,

members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against the Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary and organization liability policy(ies) (A, B or C coverage), and any tail with respect thereto.

32. "<u>Interest</u>" means any equity interest in the Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

33. "<u>License Agreement</u>" means that certain License Agreement between the Parent as licensor and the Debtor as licensee dated as of December 30, 2015.

34. "<u>Market Contribution Accrual</u>" means the accrued, unpaid transfer pricing adjustment arising under the License Agreement for the year ended December 31, 2018, which amount is estimated to be in the approximate amount of $26.4 million.

35. "<u>Noticing Agent</u>" means Bankruptcy Management Solutions, Inc. d/b/a Stretto.

36. "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the District of Delaware.

37. "<u>Other Priority Claim</u>" means any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

38. "<u>Parent</u>" means Diesel S.p.A., an Italian corporation, the Debtor's sole shareholder.

39. "<u>Parent Commitment</u>" means the Parent's agreement, in exchange for the retention of its Interests as provided herein and other good and valuable consideration, subject to the occurrence of the Effective Date on or before June 21, 2019, to (a) consent to the Debtor's assumption of the License Agreement in accordance with section 365(c) of the Bankruptcy Code; (b) agree to renewal of the License Agreement for another term, which shall be without prejudice to the parties' rights to revise and renegotiate in good faith the terms and conditions of the License Agreement after the Effective Date; (c) consent to the release and payment of the full amount of the Market Contribution Accrual for the purpose of funding the Reorganization Business Plan; and (d) provide for additional funding for the Reorganization Business Plan in the amount of not less than $10 million. Confirmation that each of the foregoing terms have been agreed to will be included in the Plan Supplement.

40. "<u>Person</u>" means an individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

41. "Petition Date" means March 5, 2019, the date on which the Debtor commenced the Chapter 11 Case.

42. "Plan Supplement" means the supplement to the Plan, if any, which is incorporated fully into the Plan, that will contain the exhibits and Plan documents necessary and appropriate to implement the terms of the Plan, and which shall be filed by the Debtor no later than fifteen (15) days prior to the Confirmation Hearing or such other date as may be approved by the Bankruptcy Court, including any amendments, modifications, and/or supplements thereto.

43. "Priority Tax Claim" means any Claim of a Governmental Unit, as defined in § 101(27) of the Bankruptcy Code, entitled to priority under Bankruptcy Code § 507(a)(8).

44. "Professional Fee Claim" means an Administrative Claim for compensation and reimbursement of expenses of a Professional incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

45. "Professional" means a Person: (a) employed in the Chapter 11 Case pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328, 363, or 1103 and compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

46. "Professional Fee Bar Date" means the first Business Day that is 30 days after the Effective Date.

47. "Pro Rata" means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of that Allowed Claim is the same as the ratio of all consideration distributed on account of all Allowed Claims in that Class to the amount of all Allowed Claims in that Class.

48. "Reinstated" or "Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder so as to leave such Claim Unimpaired in accordance with § 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Claim Holder to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in § 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Claim Holder for any damages incurred as a result of any reasonable reliance by such Claim Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Claim Holder; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions

contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

49. "<u>Rejection Bar Date</u>" means the date that is twenty-one (21) days after the Effective Date.

50. "<u>Rejection Damages Claim</u>" means any Claim on account of the rejection of an Executory Contract or Unexpired Lease pursuant to § 365 of the Bankruptcy Code or the repudiation of such contract.

51. "<u>Rejection Date</u>" has the meaning set forth in <u>Article VI.B.1.</u>

52. "<u>Rejection Damages Claim Objection Deadline</u>" means (a) the first Business Day that is at least seven (7) days after the Rejection Bar Date or (b) such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtor without further notice to parties-in-interest.

53. "<u>Reorganization Business Plan</u>" means the Debtor's three-year business plan for the years 2019-2021, as more fully described in <u>Article II.F.2</u> of the Disclosure Statement.

54. "<u>Reorganized Debtor</u>" means Diesel USA, Inc., the Debtor herein, upon the Effective Date of this Plan.

55. "<u>Scheduled</u>" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases.

56. "<u>Schedule of Rejected Executory Contracts and Unexpired Leases</u>" means the schedule of certain Executory Contracts and Unexpired Leases to be rejected by the Debtor, as the same may be amended, modified, or supplemented from time to time, and which will be included in the Plan Supplement.

57. "<u>Secured Claim</u>" means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

58. "<u>Statutory Committee</u>" means any statutory committee appointed in this Chapter 11 Case.

59. "<u>Unexpired Lease</u>" means a lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under §365 of the Bankruptcy Code.

60. "<u>Unimpaired</u>" means, with respect to a Class of Claims or Interests, such Class is not Impaired.

B. <u>Rules of Construction</u>.

01:24374626.1

1. <u>Generally</u>. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

2. <u>Time Periods</u>. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

3. <u>Miscellaneous Rules</u>. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii)    whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## <u>ARTICLE II – TREATMENT OF UNCLASSIFIED CLAIMS</u>

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

A. <u>Administrative Claims</u>.  Except to the extent that a Holder of an Allowed Administrative Claim and either the Debtor or Reorganized Debtor, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of such Allowed Administrative Claim, be paid the full unpaid amount of such Allowed Administrative Claim in Cash on, or as soon thereafter as is reasonably practicable, (a) the Effective Date or, if payment is not then due, (b) on the due date of such Allowed Administrative Claim; *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.  Any taxes that arose postpetition shall be paid in the ordinary course of business and the taxing authorities that hold Claims on account of such postpetition taxes shall not be required to file a proof of claim for an Administrative Claim in the Chapter 11 Case.

B. <u>Professional Fee Claims</u>. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) three days after the Professional Fee Claim is Allowed; and (b) another date on which the holder of the Professional Fee Claim and the Debtor or Reorganized Debtor agree.  Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized Debtor its final application for allowance

of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

C. <u>Post-Effective Date Professional Fees</u>. All claims of Professionals for services rendered or expenses incurred after the Effective Date in connection with the Chapter 11 Case and the Plan including, but not limited to, those relating to consummation of the Plan, any appeal of the Confirmation Order, the preparation, filing, and review of Professional Fee Claims, the prosecution of Causes of Action, and the resolution of Disputed Claims, shall be paid by the Reorganized Debtor on receipt of an invoice, or on other terms on which the Reorganized Debtor and the Professional agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

D. <u>Priority Tax Claims</u>. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

## ARTICLE III – CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

A. <u>Classification and Treatment Generally</u>. Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving distributions under the Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article II.

B. <u>Classification and Treatment of Classified Claims and Interests</u>. Classified Claims and Interests are divided into numbered classes as follows:

| Class | Treatment | Entitled To Vote |
|---|---|---|
| Class 1 – Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 – Secured Claims | Unimpaired | No (Deemed to Accept) |
| Class 3 – General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| Class 4 – Rejection Damages Claims | Unimpaired | No (Deemed to Accept) |
| Class 5 – Interests | Unimpaired | No (Deemed to Accept) |

1. <u>Class 1: Other Priority Claims</u>

a. Treatment: Except to the extent that a Holder of an Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, each Holder

of such Other Priority Claim shall receive the following at the option of the Debtor:

1. Payment of an Allowed Other Priority Claim in full in Cash in the ordinary course of business;

2. Reinstatement of such Other Priority claim; or

3. Such other treatment rendering such Other Priority Claim Unimpaired.

b. Impairment and Voting: Class 1 is Unimpaired and all Holders of Class 1 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

2. <u>Class 2: Secured Claims</u>

a. Treatment: Except to the extent that a Holder of a Secured Claim agrees to less favorable treatment, each holder of a Secured Claim shall receive, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, the following, at the option of the Debtor:

1. Payment of an Allowed Secured Claim in full in Cash in the ordinary course of business;

2. Reinstatement of such Secured Claim; or

3. Such other treatment rendering such Secured Claim Unimpaired.

b. Impairment and Voting: Class 2 is Unimpaired and all Holders of Class 2 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

3. <u>Class 3: General Unsecured Claims</u>

a. Treatment: Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, each Holder of a General Unsecured Claim shall, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, receive at the sole option of the Debtor either:

1. Reinstatement of such General Unsecured Claim;

2. Payment in Cash in the full amount of an Allowed General Unsecured Claim plus interest on such Allowed General Unsecured Claim, if any, from the Effective Date to the date of payment at the rate provided by contract or, if no contract exists, at the statutory rate provided by 29 U.S.C. § 1961, which payment shall occur on the later of (i) the Effective Date and (ii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim; or

3. Such other treatment as would render such General Unsecured Claim otherwise Unimpaired pursuant to section 1124 of the Bankruptcy Code.

b. Impairment and Voting: Class 3 is Unimpaired and all Holders of Class 3 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

4. Class 4: Rejection Damages Claims

a. Treatment:  Except to the extent that a Holder of an Allowed Rejection Damages Claim agrees to less favorable treatment, each Holder of an Allowed Rejection Damages Claim shall, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, receive payment in Cash in the full amount of its Allowed Rejection Damages Claim plus interest on such Allowed Rejection Damages Claim, if any, from the Effective Date to the date of payment at the rate provided by contract or, if not specified by the contract, at the statutory rate provided by 29 U.S.C. § 1961, which payment shall occur on the later of (i) the Effective Date and (ii) thirty (30) days after entry of a Final Order rendering such Claim an Allowed Rejection Damages Claim. Notwithstanding the foregoing, in the event a Rejection Damages Claim is Allowed pursuant to the Confirmation Order, such Allowed Rejection Damages Claim shall be paid no later than twenty-one (21) days after the applicable Rejection Date.

b. Impairment and Voting: Class 4 is Unimpaired and all Holders of Class 4 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

5. Class 5: Interests

a. Treatment: All holders of Interests shall retain the Interests.

b. Impairment and Voting: Class 5 is Unimpaired and all Holders of Class 5 Interests are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

C. Effect of Plan Provisions and Resolution of Claims.

1. Except as required by an order of the Bankruptcy Court and except with respect to Rejection Damages Claims as required under Article VI of the Plan, Holders of Claims and Interests need not file a proof of claim with the Bankruptcy Court to be deemed an Allowed Claim or Interest under the Plan and shall retain all their rights under applicable non-bankruptcy law to pursue their Claims in any forum with jurisdiction over the parties and the Debtor or Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.  If the Debtor or Reorganized Debtor disputes any claims, other than Rejection Damage Claims, such disputes shall be determined, resolved, or adjudicated as if the Debtor had not filed the Chapter 11 Case.  Except as provided in Article VI of the Plan, all proofs of claim filed in this Chapter 11 Case shall be considered objected to and

01:24374626.1

Disputed without further action by the Debtor.  On the Effective Date, all proofs of claim filed against the Debtor (other than as required under Article VI of the Plan), regardless of when such proofs of claim were filed, including proofs of claims filed after the Effective Date, shall be deemed withdrawn, and such creditor that files such proof of claim with the Bankruptcy Court shall retain any right it may have to pursue remedies in a forum other than the Bankruptcy Court in accordance with applicable law.

2.    For the avoidance of doubt, the legal, equitable, and contractual rights of the Holder of any Disputed Claim (other than a Disputed Rejection Damages Claim) shall be left unaltered by the Plan.  Notwithstanding anything to the contrary in the Plan and except as set forth in the following paragraph, (a) no Claim shall be deemed settled, satisfied, resolved, released, discharged, barred, or enjoined by any provision of the Plan, (b) the provisions of Articles VII.C, VII.G, and VII.F of the Plan shall not apply to a Holder of a Claim, and (c) the property of the Debtor's Estate that vests in the Reorganized Debtor pursuant to Article VII.B of the Plan shall not be free and clear of the right of any Holder of a Claim to enforce its rights in respect of its Claim against the Reorganized Debtor, in each case, until such Claim has been (x) paid in full in accordance with applicable law, or on terms agreed to between the Holder of such Claim and the Debtor or Reorganized Debtor, or in accordance with the terms and conditions of the particular transaction giving rise to such Claim or (y) otherwise satisfied or disposed of as determined by a court of competent jurisdiction.  For the avoidance of doubt, the foregoing limitation shall not apply to any claims or Causes of Action held by the Debtor, the Estate, or the Reorganized Debtor that are released pursuant to Article VII.E of the Plan (the "Debtor Released Claims").  Such Debtor Released Claims shall be deemed settled, satisfied, resolved, released, discharged, barred and/or enjoined by the applicable provisions under, and pursuant to the express terms of, the Plan on the Effective Date.

3.    Notwithstanding the foregoing or anything else to the contrary in this Plan and for the avoidance of doubt, with respect to Class 4 Claims, (i) the Allowed amount of such Claims may be determined by the Bankruptcy Court after notice and a hearing in accordance with Article VI of the Plan, (ii) such Claims shall be discharged in accordance with Article VII.C of the Plan and the Holders of such Claims shall be subject to the injunction set forth in Article VII.G of the Plan and (iii) after payment of the Allowed amount of such Claims, Holders of such Claims shall be subject to the releases set forth in Article VII.F of the Plan.

## ARTICLE IV – NO CLASS ENTITLED TO VOTE

A.    Voting of Claims and Interests.    No Class is Impaired under the Plan.    Unimpaired Classes are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code

## ARTICLE V – MEANS OF IMPLEMENTATION

A.    Reserved.

B. <u>Plan Funding</u>.  Distributions under this Plan will be funded from Debtor's Cash on hand as of the Effective Date.

C. <u>Parent Commitment</u>. On the Effective Date, the Parent will provide the Parent Commitment and the Debtor and Reorganized Debtor, as applicable, shall be authorized to take all actions necessary or appropriate to obtain the Parent Commitment and to enter into any transactions contemplated thereunder, including but not limited to the assumption of the License Agreement.

D. <u>Distributions</u>. The Debtor or the Reorganized Debtor, as applicable, shall make all distributions in accordance with the terms of the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Holders of Allowed Claims entitled to distributions under the Plan shall provide any information requested by the Debtor necessary for making such distribution.

E. <u>Disputed Rejection Damages Claim Reserve</u>. The Reorganized Debtor must manage Cash distributions to holders of Allowed Rejection Damages Claims so as to reserve sufficient Cash to make appropriate distribution on account of any Disputed Rejection Damages Claim as if that Disputed Rejection Damages Claim were an Allowed Rejection Damages Claim on the Effective Date in the amount Scheduled for such Rejection Damages Claim in the Schedule of Rejected Executory Contracts and Unexpired Leases.  If and when any Disputed Rejection Damages Claim becomes an Allowed Rejection Damages Claim, Cash sufficient to make appropriate distribution to the holder that Claim must be made from such reserves.  If a Disputed Rejection Damages Claim or any portion thereof becomes Disallowed, all reserved distributions attributable to the Holder of that Disputed Rejection Damages Claim shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court.

F. <u>Continued Reorganized Operations</u>. The Reorganized Debtor will continue to operate with the primary purpose of continuing to conduct the Debtor's businesses through its brick and mortar retail sales, online sales, and wholesale businesses.

G. <u>Corporate Governance</u>.  The Reorganized Debtor will continue to be governed by its board of directors, consisting of Stefano Rosso, Carlo Schiavo, and Nicola Marzano.  The officers of the Debtor will continue to be Stefano Rosso as Chief Executive Officer, and Matteo Comunalazzi as Chief Financial Officer. Mr. Rosso and Mr. Comunalazzi will continue to be compensated at the same rate as provided in their pre-bankruptcy employment agreements.

H. <u>Section 1145 Exemption</u>. In accordance with section 1145 of the Bankruptcy Code, the retention under the Plan of the Interests is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

I. <u>Effectuating Documents</u>. On and after the Effective Date, the Reorganized Debtor, and the officers thereof and members of the board thereof, shall be authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, indentures, and other

01:24374626.1

agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

J.    <u>Effectiveness of Instruments and Agreements</u>. On the Effective Date, all instruments, agreements, and documents issued, entered into, delivered, or filed under the Plan are effective, binding, and enforceable in accordance with their respective terms.

K.    <u>No Corporate Action Required</u>. As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan; and (b) the other matters provided for under, or in furtherance of, the Plan involving corporate action required of the Debtor, are deemed to have occurred, are effective as provided in the Plan, and are deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the Debtor's officers, shareholders, members, or managers.

L.    <u>Post-Confirmation Management and Indemnification</u>. The day-to-day operations of Reorganized Debtor will continue to be managed by the Debtor's officers, subject to oversight from its board of directors.  Reorganized Debtor will provide its officers with indemnification rights and will compensate its officers consistent with compensation provided during the Chapter 11 Case.  Reorganized Debtor will assume any pre-Petition Date indemnification obligations to any officers employed with the Debtor as of the Petition Date.

M.    <u>Operation Pending Effective Date</u>. Until the Effective Date, the Debtor will continue to operate its business subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

N.    <u>Employee Benefits</u>. Except as otherwise provided herein, on and after the Effective Date, the Reorganized Debtor may: (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, paid time off, workers' compensation insurance and accidental death and dismemberment insurance for the directors, officers and employees of the Debtor who served in such capacity at any time and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising before the Petition Date; <u>provided, however,</u> that the Debtor's or Reorganized Debtor's performance under any employment agreement will not entitle any person to any benefit or alleged entitlement under any policy, program or plan that has expired or been terminated before the Effective Date, or restore, reinstate or revive any such benefit or alleged entitlement under any such policy, program or plan.  Nothing herein shall limit, diminish or otherwise alter the Reorganized Debtor's defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans.

## <u>ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

A. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

1. Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) was assumed or rejected previously by the Debtor; (3) expired or terminated pursuant to its own terms before the Effective Date; (4) is the subject of a motion to reject pending on the Confirmation Date; or (5) is the subject of a motion pending on the Confirmation Date to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

2. Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Debtor will continue to perform its obligations under any rejected Executory Contract or Unexpired Lease through the effective date of such rejection.

3. All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

4. Notwithstanding anything to the contrary in the Plan, the Debtor reserves the right to alter, amend, modify or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases at any time before the Confirmation Date, including without limitation the right to remove any Executory Contract or Unexpired Lease therefrom. The Debtor further reserves the right to remove any Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and Unexpired Leases at any time prior to the Effective Date upon the consent of the applicable non-Debtor counterparty.

B. <u>Procedures Related to Rejection of Executory Contracts or Unexpired Leases</u>.    The Debtor will file the Schedule of Rejected Executory Contracts and Unexpired Leases with the Plan Supplement on or before the date that is fifteen (15) days prior to the Confirmation Hearing. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan shall have until 4:00 p.m. (Eastern time) on the date that is eight (8) calendar days after service of the Schedule of Rejected Executory Contracts and Unexpired Leases upon such counterparty to file a written objection to the rejection of its Executory Contract or Unexpired Lease and serve it in a manner to be actually received by each of the following: (i) proposed co-counsel to the Debtor: Arent Fox LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, Attn: George P. Angelich and David J. Mayo <u>and</u> Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Pauline K. Morgan and Kenneth J. Enos; and (ii) the U.S. Trustee, 844 North King Street, Room 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda J. Casey, Esq.    Any such objections that cannot be consensually resolved by the Debtor and the objecting non-Debtor counterparty shall be considered by the Bankruptcy Court at the Confirmation Hearing or such other date requested by the Debtor.

1.    Executory Contracts and Unexpired Leases set forth on the Schedule of Executory Contracts and Unexpired Leases shall be deemed rejected as of the later of (a) the Effective Date and (b) with respect each such Unexpired Lease of non-residential real property, the date the Debtor surrenders the premises related to such rejected Unexpired Lease by returning the keys and key codes to the applicable non-Debtor counterparty or providing written notice that such counterparty may re-key the premises (the later of the foregoing (a) and (b), the "<u>Rejection Date</u>").

2.    <u>Abandonment of Personal Property</u>. Any fixtures, furniture, advertising displays, other office and store equipment or any other personal property left by the Debtor on the premises related to Unexpired Leases rejected pursuant to the Plan shall be deemed abandoned as of the Rejection Date pursuant to Section 554 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute authorization by the Bankruptcy Court of such abandonment and, as of the Rejection Date, the non-Debtor counterparties to such rejected Unexpired Leases may dispose of any such personal property in their sole and absolute discretion without notice or liability to the Debtor or third parties.

3.    <u>Claim Procedures for Rejection Damages Claim Holders that Agree with Scheduled Claim</u>. The Schedule of Rejected Executory Contracts and Unexpired Leases will set forth the amount of Rejection Damages Claims related to each Executory Contract or Unexpired Lease being rejected.  If a counterparty to an Executory Contract or Unexpired Lease agrees and stipulates to the Scheduled amount of its Rejection Damages Claim prior to the Confirmation Date, such party is not required to file a proof of Claim, and will be deemed to have an Allowed Rejection Damages Claim in the amount set forth on the Debtor's Schedule of Rejected Executory Contracts and Unexpired Leases as of the Confirmation Date.  Any holder that disputes the Scheduled amount of its Rejection Damages Claim is required to file a proof of Claim, pursuant to the procedures set forth in this <u>Article VI.B</u>.

4. <u>Claim Procedures for Rejection Damages Claim Holders that Disagree with Scheduled Claim</u>. If a counterparty to an Executory Contract or Unexpired Lease disputes the Scheduled amount of its Rejection Damages Claim, or believes it has a Rejection Damages Claim that has not been Scheduled, unless otherwise provided by a Bankruptcy Court order, such counterparty must file with the Bankruptcy Court a proof of Claim asserting what the counterparty believes is the correct Rejection Damages Claim on or before the Rejection Bar Date. **Any Person that disputes the Scheduled amount of its Rejection Damages Claim is required to file a proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the Rejection Bar Date shall result in any Rejection Damages Claim in excess of the Scheduled amount being disallowed in accordance with section 502 of the Bankruptcy Code and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim in excess of the Scheduled amount shall not be enforceable against the Debtor or the Reorganized Debtor, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary. In addition, any Person that believes it has a Rejection Damages Claim that has not been Scheduled is required to file a proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the applicable Rejection Bar Date shall result in any Rejection Damages Claim being disallowed in accordance with section 502 of the Bankruptcy Code and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim shall not be enforceable against the Debtor or the Reorganized Debtor, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary.**

5. <u>Time to File Objections and Replies</u>. Any objections to proofs of Claim asserting Rejection Damages Claims shall be filed on or before the Rejection Damages Claim Objection Deadline. Any reply to such an objection shall be filed not later than seven (7) days before the hearing on such objection to a Rejection Damages Claim.

6. <u>No Distributions Pending Allowance</u>. If an objection to a proof of Claim asserting a Rejection Damages Claim, or portion thereof, is filed on or before the Rejection Damages Claim Objection Deadline, no payment or distribution provided under the Plan shall be made on account of such Rejection Damages Claim, or portion thereof, unless and until such Disputed Rejection Damages Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtor. If an objection to a proof Claim asserting a Rejection Damages Claim is not filed by the Rejection Damages Claim Objection Deadline, such Claim shall become an Allowed Rejection Damages Claim in the amount asserted in such proof of Claim upon the expiration of the Rejection Damages Claim Objection Deadline.

C. <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.</u>

1. The proposed Cure amount for all Executory Contracts not identified on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be $0.00 unless otherwise indicated on the Cure Schedule. The Debtor shall file the Cure Schedule on or

before the date that is fifteen (15) days prior to the Confirmation Hearing. The Debtor shall not be required to serve the Cure Schedule on any Executory Contract counterparty not specifically named therein. **For the avoidance of doubt, if an Executory Contract between the Debtor and any non-Debtor counterparty is not listed on either (a) the Schedule of Rejected Executory Contracts and Unexpired Leases or (b) the Cure Schedule as an assumed Executory Contract with a proposed Cure amount, then the Debtor intends to assume such Executory Contract and asserts that the Cure amount for such Executory Contract is $0.00.**

2.    Any counterparty to an Executory Contract or Unexpired Lease that objects to (1) the assumption of such Executory Contract or Unexpired Lease, (2) the proposed Cure amount, (3) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (4) any other matter pertaining to assumption, shall file a written objection thereto and serve it in a manner to be actually received by each of the following by no later than 4:00 p.m. (Eastern time) on the date that is seven (7) days prior to the Confirmation Hearing: (i) proposed co-counsel to the Debtor: Arent Fox LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019, Attn: George P. Angelich and David J. Mayo and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Pauline K. Morgan and Kenneth J. Enos; and (ii) the U.S. Trustee, 844 North King Street, Room 2207, Lockbox 35, Wilmington, DE 19801, Attn: Linda J. Casey, Esq. Any timely filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed to by the parties or ordered by the Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection. Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

D.    License Agreement.    Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Reorganized Debtor if necessary to continue the License Agreement in full force) the License Agreement pursuant to section 365(a) of the Bankruptcy Code. Pursuant to the Parent Commitment, the Parent, as licensor under the License Agreement, has agreed to, subject to the occurrence of the Effective Date on or before June 21, 2019, provide its consent to the Debtor's assumption of the License Agreement pursuant to section 365(c)(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of the License Agreement.

E.    Insurance Policies. Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Reorganized Debtor if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the Insurance Policies.

01:24374626.1

F. <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G. <u>Contracts and Leases Entered into After the Petition Date</u>. Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

H. <u>General Reservation of Rights</u>. Neither the exclusion nor inclusion of any contract or lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor, or any of its affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## <u>ARTICLE VII – EFFECT OF THE PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION</u>

A. <u>Binding Effect</u>. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has been deemed to accept the Plan.

B. <u>Vesting of Assets</u>. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

C.  Discharge.  Except as provided in this Plan or the Confirmation Order, the rights granted under this Plan and the treatment of Claims and Interests under this Plan shall be in full and final satisfaction, discharge, and release of all Claims and Interests.  Except as provided in this Plan or the Confirmation Order, confirmation of this Plan discharges the Debtor and Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(i), whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code § 501; (b) a Claim based on such debt is Allowed under Bankruptcy Code § 502; or (c) the holder of a Claim based on such debt has accepted this Plan. Without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1).

D.  Term of Injunctions or Stays.  Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

E.  Releases by the Debtor.  Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, each of (i) the Debtor's current and former officers, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of the Debtor, in each case solely in their capacity as such and (ii) the Parent, its affiliates, and the current and former officers, directors, principals, members, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives of the Parent, in each case solely in their capacity as such, are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise that the Debtor or its Estate would have been legally entitled to assert in their own right or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, the negotiation, formulation or preparation of the Plan, the Plan Supplement, or related agreements, instruments, or other documents in connection with the transactions contemplated under the Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided* that nothing in the Plan, including this Article VII.E shall release (i) any obligations under the Plan or the Plan Supplement; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.

F.  **Releases by Holders of Claims.  As of the Effective Date, except as otherwise provided in the Plan, all Persons who have held, hold, or may hold Claims, Interests, causes of action, or liabilities that are subject to compromise and settlement pursuant to the terms of the Plan or are otherwise discharged, satisfied, stayed or terminated pursuant to the Plan are deemed to have released the Debtor, Reorganized Debtor, the Estate and each of their affiliates, current and former officers, directors, principals, members, professionals,**

advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives (collectively, the "**Released Parties**"), from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct claims held by any such Person against each Released Party or derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, the Debtor's restructuring, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any such Person, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Confirmation Order, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date; *provided* that, notwithstanding anything to the contrary in the foregoing, nothing in the Plan, including this <u>Article VII.F</u> shall release (i) any obligations under the Plan or the Plan Supplement; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.

G. **Injunction.**

1. **Generally. Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article III of the Plan or that is subject to a distribution under the Plan, or an Interest or other right of an equity holder, are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.**

2. Limited Scope. Nothing in this Plan: (i) extinguishes, prohibits, or otherwise limits the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan; (ii) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Debtor to assert and prevail on any Cause of Action; (iii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order.

H. <u>Reserved</u>.

I. **<u>Exculpation</u>. The Exculpated Parties shall not have any liability to any holder of a Claim or Interest for any claims or Causes of action arising before, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.**

J. <u>Preservation and Application of Insurance</u>. The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

K. <u>Reserved</u>.

L. <u>Waiver of Avoidance Actions; Reservation of Rights</u>. All Avoidance Actions are hereby waived, effective on the Effective Date; <u>provided</u>, <u>however</u>, that the Debtor and the Reorganized Debtor, as applicable, reserve all rights, including the right under section 502(d) of the Bankruptcy Code, to use defensively the abandoned avoidance cause of action as a basis to object to all or any part of a Claim against the Estates asserted by a Holder which remains in possession of, or otherwise obtains the benefit of, an avoidable transfer.

M. <u>Retention, Reservation and Prosecution of Causes of Action</u>. Except as otherwise provided in the Plan, all Causes of Action other than Avoidance Actions are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Causes of Action other than Avoidance Actions. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Causes of Action other than Avoidance Actions, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Causes of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Cause of Action, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

## <u>ARTICLE VIII – CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE</u>

A. <u>Conditions to Effectiveness</u>. The Effective Date does not occur unless and until:

1. The Confirmation Date occurs and the Confirmation Order has become a Final Order, which shall, among other things, provide that the Debtor and Reorganized Debtor, as applicable, shall be authorized to take all actions necessary or

appropriate to obtain the Parent Commitment and to enter into any transactions contemplated thereunder, including but not limited to the assumption of the License Agreement;

2.  The Debtor shall have obtained the Parent Commitment (and all conditions thereto shall have been satisfied or waived);

3.  No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 is pending;

4.  Sufficient Cash exists to make all payments required under the Plan to be made on the Effective Date;

5.  The Debtor shall have established the reserve for Disputed Rejection Damages Claims in accordance with Article V.E of the Plan;

6.  The Debtor shall have surrendered the premises for each Unexpired Lease rejected through the Plan; and

7.  All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

B.  <u>Waiver of Conditions</u>. The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

C.  <u>Effect of Non-Occurrence of the Effective Date</u>. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; (b) prejudice in any manner the rights of the Debtor, including any right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

## <u>ARTICLE IX – MISCELLANEOUS</u>

A.  <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.  resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtor's amendment, modification, or supplement after the Confirmation Date, pursuant to Article VI of the Plan, of the Schedule of Executory

Contracts and Unexpired Leases; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

2.    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

3.    ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.    hear and determine or resolve any and all matters related to Causes of Action;

5.    enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

6.    issue and implement orders in aid of execution, implementation, or consummation of this Plan;

7.    consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

8.    hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

9.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

10. hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of their Estates, wherever located;

11. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

12. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event

that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

13. hear any other matter not inconsistent with the Bankruptcy Code;

14. hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

15. issue a final decree and enter an order closing the chapter 11 case; and

16. enforce all orders previously entered by the Bankruptcy Court.

After the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

B. <u>Effecting Documents; Further Transactions; Timing</u>. The Debtor and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

C. <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

D. <u>Exemption from Transfer Taxes</u>. Under Bankruptcy Code § 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

E. <u>Post-Effective Date Fees; Final Decree</u>. Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Reorganized Debtor is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which Reorganized Debtor must seek as soon as feasible after distributions under the Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

F. <u>Modification and Amendments</u>. The Debtor may alter, amend, or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

G. <u>Method of Payment; Payments, Filings, and Notices Only on Business Days</u>. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

H. <u>Undeliverable or Unclaimed Distributions</u>. If any distribution to a Holder of an Allowed Claim made in accordance herewith (which, for the avoidance of doubt, shall not include any payment with respect to any Administrative Claim or any Claim in Classes 1, 2, or 3) is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.  Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a final decree Closing the Chapter 11 Case.

I. <u>Time Bar to Cash Payments</u>. Checks issued by the Reorganized Debtor in respect of Allowed Claims (which, for the avoidance of doubt, shall not include any payment with respect to any Administrative Claim or any Claim in Classes 1, 2, or 3) shall be null and void if not negotiated within 60 days after the date of issuance thereof.  Requests for reissuance of any check shall be in writing to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any such written claim in respect of such a voided check must be received by the Reorganized Debtor on or before 60 days after the expiration of the 60 day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions.  Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

J. <u>Dissolution of any Statutory Committee</u>. On the Confirmation Date, any Statutory Committee formed in connection with the Chapter 11 Case shall dissolve automatically and all

members thereof shall be released and discharged from all rights, duties and responsibilities arising from or related to the Chapter 11 Case.

K. <u>Revocation, Withdrawal, or Non-Consummation</u>. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtor's filing of a notice thereof, and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Causes of Action or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

L. <u>Notices</u>. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

<u>If to the Reorganized Debtor</u>:

Diesel USA, Inc.
220 W 19th St
8th Floor
New York, NY 10011
Attn: Matteo Comunalazzi, Stefano Rosso

With a copy (which shall not constitute notice) to:

Arent Fox LLP
1301 Avenue of the Americas
42nd Floor
New York, NY 10019
Attn: George P. Angelich, Esq., David J. Mayo, Esq., Phillip Khezri, Esq.

<u>And</u>

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Attn: Pauline K. Morgan, Esq., Kenneth J. Enos, Esq., and Travis G. Buchanan, Esq.

<u>If to U.S. Trustee</u>:
Office of the United States Trustee for the District of Delaware
Room 2207, Lockbox 35
844 North King Street
Wilmington, DE 19801
Attn: Linda J. Casey, Esq.

M. <u>Entire Agreement</u>. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

N. <u>Severability</u>. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

O. <u>Exhibits</u>. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Debtor's counsel, by contacting Arent Fox LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019 or Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, at the Bankruptcy Court's website at <u>https://ecf.deb.uscourts.gov/</u> or at the website of the Noticing Agent, <u>http://cases.stretto.com/dieselUSA</u>.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

P. <u>Conflicts</u>. Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; <u>provided, however,</u> that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

*[SIGNATURE ON FOLLOWING PAGE]*

Respectfully submitted, as of April 10, 2019,

**DIESEL USA, Inc.**
By:      */s/ Mark G. Samson*
Name: Mark G. Samson
Title:   Chief Restructuring Officer